IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JULIE ANN VASQUEZ,

        Plaintiff,

v.                                       No. CV 11–0989 LAM

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's *Motion to Reverse or Remand the Administrative Decision (Doc. 19)* and *Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision (Doc. 20)* (hereinafter, collectively "*Motion*"). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 5* and *7*]. The Court has reviewed Plaintiff's *Motion*, Defendant's *Response to Plaintiff's Motion to Reverse and Remand (Doc. 24)*, *Plaintiff's Reply to Defendant's Response to Motion to Reverse/Remand (Doc. 25)*, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 13, 14* and *15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's *Motion* should be **GRANTED in part** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED**.

# I.  Procedural History

On January 23, 2008, Plaintiff protectively filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on October 13, 2006. [*Doc. 13-5* at 2 and 3] and [*Doc. 13-8* at 2-4].  Plaintiff stated that she became disabled due to "bi-polar disorder, manic depressive, diabetes, back problems, leg problems due to back, migraines, osteo arthritis [sic], polycystic ovarian disease, [and] anxiety." [*Doc. 13-9* at 8].  Her applications were denied at the initial level on April 24, 2008 (*Doc. 13-6* at 2-5) and at the reconsideration level on July 22, 2008 (*id.* at 8-10 and 11-13).  On December 3, 2009, Administrative Law Judge Sean Teehan (hereinafter "ALJ") conducted a hearing.  [*Doc. 13-4* at 2-97].  Plaintiff was represented by counsel and testified at the hearing.  *Id.* at 4, 10-51, 55-63.  Medical Expert Alfred G. Jonas, M.D., psychiatrist, testified by telephone (*id.* at 4, 51-55),[1] and Vocational Expert Diane Weber (hereinafter "VE") was present and testified at the hearing (*id.* at 80-96).

On January 29, 2010, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 13-3* at 14-23].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10), and, on October 17, 2011, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.  On November 8, 2011, Plaintiff filed her complaint in this case.

---

[1]Plaintiff argues that 20 C.F.R. §§ 404.950(a) and 404.936(c) provide that witnesses must appear in person or by video teleconferencing, and that there is no provision for appearing for a hearing by telephone.  [*Doc. 20* at 9, n.1]. Defendant did not address this issue in his response brief.  The Court directs the Commissioner to comply with the regulations regarding video teleconferencing if another hearing is held on remand.  *See* 20 C.F.R. § 404.950(e) (providing that witnesses may testify by video teleconferencing).

[*Doc. 1*].  In her ***Motion***, Plaintiff states that, on February 15, 2010, she filed a second claim, and, on August 29, 2010, she was found to be disabled beginning on January 30, 2010, the date after the ALJ's decision on her first claim.  [*Doc. 20* at 1].  Therefore, Plaintiff's claim in this case is for the period of time from October 13, 2006 (her alleged onset date) to January 29, 2009 (the date of the ALJ's decision).  *Id.*

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."   20 C.F.R.

§§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the

evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able

to perform other work in the national economy, considering his residual functional capacity

(hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience,
## and Medical History; and the ALJ's Decision

Plaintiff was born on July 4, 1976.  [*Doc. 13-9* at 2].  Plaintiff states that she attended, but

did not complete, high school and has not obtained an equivalency diploma.  [*Doc. 13-4* at 10].

Plaintiff has held clerical positions and worked as a patient coordinator.  [*Doc. 13-9* at 9].  Plaintiff

alleges that she became disabled on October 23, 2006, and she is unable to work because of mental

disorders, back problems, leg problems, osteoarthritis, and polycystic ovarian disease.  [*Doc. 13-9*

at 8].

Plaintiff's medical records document treatment and records from: S.E.D. Medical

Laboratories; Albuquerque Regional MC; Northeast Heights Medical Center; Breast Imaging

Center; TriCore Reference Laboratories; Integrative Medicine Clinic (Dr. Aaron B. Kaufman, D.O.);

Norland Medical Systems, Inc.; Jeanne C. Phillips, C.N.P.; William A. Harrison, M.D.; Correctional

Medical Services; Bernalillo County Metropolitan Detention Center; State of New Mexico

Department of Health; Dr. Samir Kassicieh, D.O.; St. Martin's Hospitality Center; Albuquerque

Healthcare for the Homeless; LabCorp Dallas; Presbyterian Magnetic Resonance Imaging Center;

Anita Willard, APRN, BC; St. Martin's Behavioral Health; Carlsbad Mental Health Association;

New Mexico Spine; The Evolution Group; University of New Mexico Psychiatric Center; Medicaid

Home and Community Based Services; New Mexico Orthopaedics; Presbyterian Hospital; Presbyterian Healthcare Services; and Albuquerque Imaging Center. [*Docs. 14* and *15*]. Plaintiff's medical records also include: two Consultative Examinations, one by Charles D. Mellon, M.D., dated April 2, 2008 (*Doc. 14-2* at 48-51), and one by John R. Vigil, M.D., dated April 14, 2008 (*Doc. 14-5* at 62-67); a Psychiatric Review Technique by Cal VanderPlate, Ph.D. ABPP, dated April 16, 2008 (*Doc. 14-6* at 2-15); and three Mental Residual Functional Capacity Assessments, one by Cal VanderPlate, Ph.D. ABPP, dated April 16, 2008 (*Doc. 15-6* at 47-50), one by Anita Willard, APRN, BC, dated June 9, 2008 (*Doc. 14-6* at 21-26), and one by Michael Waldschmidt, dated September 10, 2009 (*Doc. 15-6* at 42-46). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 13, 2006, the alleged onset date of Plaintiff's disability. [*Doc. 13-3* at 16]. At step two, the ALJ found that Plaintiff has the following severe impairments: "lumbar disorder, stress incontinence and polysubstance abuse disorder." *Id.* at 17. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 18.

Before step four, the ALJ determined that Plaintiff has the RFC to: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours out of an eight-hour workday; stand and/or walk for six hours out of an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes or scaffolds. *Id.* The ALJ further

found that Plaintiff has the RFC to: "understand and remember detailed, complex or short, simple instructions;" "is mildly limited in her ability to sustain concentration and task persistence, but she is able to maintain concentration, persistence and pace for two-hour increments over an eight-hour workday for forty hours per week;" "can relate to coworkers and the public on an occasional basis;" and "can relate to supervisors as necessary." *Id.* The ALJ also found that Plaintiff has no limitations with respect to adaptation. *Id.* In support of the RFC finding, the ALJ stated that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the ALJ's RFC assessment. *Id.* at 19. The ALJ stated that Plaintiff's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of Plaintiff's medical history and reports of the treating and examining physicians, and that "[t]he intensity of the pain and degree of incapacity asserted by [Plaintiff] are inconsistent with the medical evidence of record." *Id.* At step four, the ALJ found that Plaintiff is unable of performing her past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 21-22.

At the fifth and final step, the ALJ noted that Plaintiff was 30 years old at the time of her alleged onset date and Plaintiff "has a limited education and is able to communicate in English." *Id.* at 22. The ALJ stated that the VE was asked "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that there were jobs available for such an individual. *Id.* at 22-23. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles."

*Id.* at 23.  The ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.*  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

## V.  Analysis

Plaintiff contends that the ALJ erred in his RFC assessment because: (1) at step two, the ALJ erroneously found that Plaintiff's substance abuse was severe and failed to find that Plaintiff's mental impairments are severe; (2) at step three, the ALJ erred in his assessment under the Listing of Impairments; (3) the ALJ's credibility findings were unsupported; (4) the ALJ's RFC was in error; and (5) at step five, the ALJ erroneously found that there were significant numbers of jobs Plaintiff could perform.  [*Doc. 20* at 6-25].  As relief, Plaintiff asks the Court to either remand the case or reverse the Commissioner's decision and enter an immediate award for benefits.  *Id.* at 26. In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed.  [*Doc. 24* at 3-14].

### A.  The ALJ's Step Two Findings

Plaintiff's first claim is that the ALJ erred in his step two findings of impairments by finding that Plaintiff's substance abuse was severe, but finding that her other mental impairments were not severe.  [*Doc. 20* at 7-11].  Plaintiff contends that the ALJ should not have found that Plaintiff's substance abuse was a severe impairment because, while Plaintiff admittedly had a history of substance abuse, she "had been clean and sober from 2007 until July 2008 when she had a brief relapse."  [*Doc. 20* at 7].  On the other hand, Plaintiff contends that the ALJ should have found that

her other diagnosed psychiatric impairments were severe because the record shows that they have more than a minimal impact on her ability to perform basic work activities, and because most of Plaintiff's assessments include low Global Assessment of Functioning scores.[2]  *Id.* at 7-9.  Plaintiff contends that the ALJ should not have relied on Dr. Jonas' testimony regarding Plaintiff's substance abuse and mental impairments because he never treated or examined Plaintiff and did not accurately summarize the record.  *Id.* at 9-11.

Defendant contends that the ALJ's substance abuse finding was correct because Plaintiff admitted abusing drugs and alcohol during the adjudicated period, and the ALJ supported this finding by noting that Plaintiff admitted to her treatment personnel that she would drink whenever she thought she could get away with it and not get caught by probation.  [*Doc. 24* at 6].  With regard to Plaintiff's mental diagnoses, Defendant contends that, because the ALJ found that at least one of Plaintiff's impairments was severe, any failure to find another particular impairment is severe at step two is not reversible error.  *Id.* (citing *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149, 2009 WL 3821522 (10th Cir. Nov. 17, 2009) (unpublished)).

In her reply, Plaintiff contends that the ALJ's failure to find Plaintiff's mental impairments to be severe at step two is in error because their limiting effects were not considered in the other steps of the opinion.  [*Doc. 25* at 2].  Plaintiff also contends that, because there is no evidence of regular substance abuse, the ALJ's finding of a severe substance abuse impairment was in error.  *Id.* at 4.

---

[2]The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning.  DSM-IV-TR at 32.

An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  When determining whether a claimant has a mental disorder, an ALJ must follow a two-step procedure: (1) evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether he or she has a medically determinable mental impairment; and (2) evaluate the impact of that mental impairment on the claimant's ability to function.  *Grogan*, 399 F.3d at 1264 (citation omitted).  In making his or her decision, the ALJ must also discuss "the evidence supporting his decision, . . . [as well as] the uncontroverted evidence he chooses not to rely upon . . . [and] significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted).

At step two, the ALJ  found that Plaintiff's polysubstance abuse was a severe impairment, stating that Plaintiff "has a history of substance abuse, specifically alcohol and cocaine," and citing to Exhibits: 5F (documents from the Bernalillo County Metropolitan Detention Center) (*Doc. 14-2* at 36-46); 6F (Consultative Examination by Charles D. Mellon, M.D.) (*Doc. 14-2* at 47-51); 8F and 9F (documents from St. Martin's Hospitality Center and Albuquerque Healthcare for the Homeless) (*Doc. 14-3* at 1-50, *Doc. 14-4* at 1-41, and *Doc. 14-5* at 1-58); 14F (Questionnaire and Mental RFC Assessment by Anita Willard, APRN, BC dated June 9, 2008) (*Doc. 14-6* at 19-26); 15F (documents from St. Martin's Behavioral Health) (*Doc. 14-6* at 27-49); 17F (documents from Carlsbad Mental Health Association) (*Doc. 15-2* at 2-39); and 23F (Medicaid Home and Community Based Services Medical Assessment Form) (*Doc. 15-3* at 22-23). [*Doc. 13-3* at 17].  The ALJ then discussed Plaintiff's mental impairments, noting that "[t]he record contains diagnoses of multiple mental impairments including depressive disorder, bipolar disorder, post-traumatic stress disorder

and schizoaffective disorder," and that Plaintiff "has also alleged suffering numerous traumatic brain injuries and concussions." *Id.*  However, the ALJ found that Plaintiff's mental impairments were not severe, stating that: the record contains no contemporaneous treatment records for brain injuries or concussions; Dr. Jonas testified that a diagnosis relating to Plaintiff's mental impairments "could not be confirmed as there was an absence in the record of neuropsychological testing and a lack of IQ testing;" Dr. Jonas testified that Plaintiff's bipolar and depressive disorders "could not be confirmed as the documentation in the record did not support the diagnosis of severe depression or mania;" Dr. Jonas testified that there was no evidence in the record of hospitalizations due to depression or mania; Dr. Jonas testified that Plaintiff's diagnoses for post-traumatic stress disorder and personality disorder "could not be confirmed due to interference from [Plaintiff's] substance abuse;" and Dr. Jonas testified that Plaintiff's diagnosis for schizoaffective disorder "was excessive and unreasonable as it was based solely on [Plaintiff's] subjective allegations of hallucinations and the absence of any hospitalization secondary to such impairment." *Id.*

The Court finds that the ALJ failed to adequately explain his rejection of Plaintiff's numerous mental disorder diagnoses and low GAF scores.  This evidence includes: a diagnosis of a GAF score of 40[3] by Peggy Harter, LPCC on October 19, 2006 (*Doc. 14-5* at 29-30); diagnoses by Dr. Mellon on April 2, 2008 of depressive disorder NOS [not otherwise specified] and borderline personality disorder, and a GAF score of 52 (*Doc. 14-2* at 48 and 50); diagnosis of bipolar disorder

---

[3]A GAF score within the range of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV-TR at 34.  A score between 41 and 50 indicates "[s]erious symptoms," such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job," and a score between 51 and 60 indicates "moderate difficulty in social, occupational or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Id.*

by John R. Vigil, M.D. on April 14, 2008 (*Doc. 14-5* at 62 and 66); diagnoses of bipolar with

psychotic features, "rule out schizoaffective disorder," post-traumatic stress disorder, and a GAF

score of 45 by Anita Willard, APRN BC on May 5, 2008 (*Doc. 14-6* at 39-40); a diagnosis of

schizoaffective disorder and a GAF score of 30 by Anita Willard, APRN BC on July 28, 2008 (*id.*

at 29-30); diagnoses of bipolar disorder NOS and post-traumatic stress disorder and a GAF score

of 40 at the Carlsbad Mental Health Association on August 20, 2008 (*Doc. 15-2* at 32-34) (Plaintiff

had a GAF score of 50 when discharged on September 18, 2008, *id.* at 6-7); diagnoses of bipolar

disorder and post-traumatic stress disorder by Christina Carlson, APRN BC on October 21, 2008

(*Doc. 15-2* at 42); diagnoses of bipolar affective disorder and post-traumatic stress disorder and a

GAF score of 45 by Alan Gilmore, LPCC on April 30, 2009 (*Doc. 15-3* at 20-21); diagnoses of

mood swings and depression related to bipolar disorder by Christina Carlson, APRN BC on May

7, 2009 (*Doc. 15-2* at 53); and diagnoses of bipolar affective depressive disorder Type I, "current

episode depressed and moderate," psychotic disorder NOS and a GAF score of 45 by Jasen

Christensen, DO on June 9, 2009 (*Doc. 15-3* at 5-6).  The ALJ rejected all of these diagnoses and

GAF scores, for the reasons set forth above.  *See* [*Doc. 13-3* at 17].

      The Court finds that the ALJ's reasoning for rejecting this evidence fails for several reasons.

First, the ALJ's failure to discuss Plaintiff's numerous mental impairment diagnoses and consistently

low GAF scores is plain error.  *See Clifton*, 79 F.3d at 1010 (explaining that an ALJ must discuss

the evidence supporting his decision, as well as the uncontroverted evidence he chooses not to rely

upon and significantly probative evidence he rejects).  In addition, the ALJ's reliance on Dr. Jonas'

testimony to the exclusion of all of the evidence to the contrary from Plaintiff's treating and

examining sources, is also error because Dr. Jonas is a non-treating and non-examining source.

"The opinion of an examining physician is generally entitled to less weight than that of a treating

physician, and the opinion of an agency physician who has never seen the claimant is entitled to the

least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  It was legal error

for the ALJ to reject Plaintiff's numerous mental impairment diagnoses and to fail to discuss

Plaintiff's consistently low GAF scores, based on the testimony of a non-treating, non-examining

source, especially when that testimony contradicts the majority of the evidence in the record.  *See*

*id.* at 1083 ("The ALJ is not entitled to pick and choose from a medical opinion, using only those

parts that are favorable to a finding of nondisability.") (citation omitted).  To the extent the ALJ

rejected this evidence because of a lack of evidence in the record from Plaintiff's treating sources,

the ALJ was, instead, required to further develop the record.  *Robinson*, 366 F.3d at 1084 ("If

evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled,

an ALJ is required to recontact a medical source, including a treating physician, to determine if

additional needed information is readily available.") (citations omitted).

　　In addition, the ALJ's rejection of evidence relating to Plaintiff's mental impairments based

on Dr. Jonas' testimony regarding Plaintiff's substance abuse is erroneous.  Pursuant to 42 U.S.C.

§ 423(d)(2)(C), an ALJ cannot consider a claimant to be disabled "if alcoholism or drug addiction

. . . would be a contributing factor material to the Commissioner's determination that the individual

is disabled."  This statute's implementing regulations, 20 C.F.R. §§ 404.1535 and 416.935, however,

"make clear that a finding of disability is a condition precedent to an application of

Section 423(d)(2)(C)."  *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).  Thus, "[t]he

Commissioner must first make a determination that the claimant is disabled[, and h]e must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol." *Id.* (citations omitted). Here, it appears that the ALJ considered whether Plaintiff's substance abuse rendered Plaintiff's post-traumatic stress and personality disorders non-severe at step two -- prior to a finding of disability. *See* [*Doc. 13-3* at 17] (relying on Dr. Jonas' testimony that "those diagnoses could not be confirmed due to interference from [Plaintiff's] substance abuse"). This is improper because the ALJ is required to *first* determine whether Plaintiff is disabled, and then consider whether Plaintiff would still be disabled absent her substance abuse.

Defendant contends that the ALJ's failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe. [*Doc. 24* at 6-7] (citing *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149, 2009 WL 3821522 (10th Cir. Nov. 17, 2009) (unpublished)). The Court, however, finds that case to be distinguishable. In *Dray*, the Tenth Circuit found that the ALJ's failure to find that the claimant had severe mental impairments was not reversible error because the ALJ found that the claimant had at least one other severe impairment. *Id.* However, in that case, the ALJ "specifically considered [the claimant's] mental impairments at steps two, three and four of the analytical process." *Id.* at 150. Here, the ALJ did not consider Plaintiff's mental impairments at step three. *See* [*Doc. 13-3* at 18]. At step four, the ALJ noted that the evidence in the record included diagnoses of mental disorders; however, the ALJ stated that he "finds those assessments to be unpersuasive" because: (1) that evidence was based on impairments that were found to be non-severe; and (2) Dr. Jonas testified that those diagnoses could not be confirmed because of a lack of supporting documentation and Plaintiff's

14

substance abuse. [*Doc. 13-3* at 21]. As explained above, the ALJ erred by relying on Dr. Jonas'

testimony absent a discussion of Plaintiff's multiple diagnoses by treating and examining doctors

which conflict with that testimony, and the ALJ also erred by failing to develop the record with

regard to Plaintiff's mental impairments and by considering Plaintiff's substance abuse in relation

to her mental impairments absent a finding of a disability. Therefore, the Court finds that the ALJ's

error in his consideration of the evidence relating to Plaintiff's mental impairments at step two was

not cured at step four, as opposed to the situation in *Dray*, where the error at step two was

ameliorated by proper consideration of the claimant's mental impairments at steps three and four.

The Court, therefore, finds that the ALJ's failure to properly consider Plaintiff's mental impairments

at step two is legal error.

### B.  The ALJ's Assessment under the Listing of Impairments

Plaintiff next contends that the ALJ erred by failing to find that Plaintiff's mental and lumbar

impairments met the criteria of listed impairments. [*Doc. 20* at 12 and 16]. Specifically, Plaintiff

contends that the ALJ should have found that Plaintiff met the Listing of Impairments under § 12.04

(Affective Disorder), § 12.06 (Anxiety Related Disorders), and § 1.04 (Disorders of the Spine), and

that the ALJ failed to properly consider the medical evidence with regard to these impairments.

*Id.* and [*Doc. 25* at 4-7]. Defendant contends that Plaintiff does not meet the requirements for any

of these listings. [*Doc. 24* at 3-5 and 7-11].

An ALJ is only required to consider at step three those impairments that have been found to

be severe at step two. *See Pritchett v. Astrue*, No. 06-5130, 220 Fed. Appx. 790, 792,

2007 WL 867182 (10th Cir. March 23, 2007) (unpublished) ("Because plaintiff's pain disorder was

not a severe impairment, the ALJ was not required to consider it at step three when he applied the listings.") (citation omitted).  The ALJ in this case did not consider Plaintiff's mental impairments at step three, having found at step two that they were not severe.  The Court has found that the ALJ erred at step two regarding his consideration of Plaintiff's mental impairments, and, on remand, those impairments may be found to be severe.  In that case, the ALJ must consider whether they meet the criteria of a listed impairment at step three.  The Court, therefore, declines to determine whether Plaintiff's mental impairments meet the criteria for a listed impairment because that determination may be revised on remand based on the step two findings.

With regard to Plaintiff's lumbar impairment, the ALJ found that Plaintiff's lumbar disorder does not meet or equal Listing 1.04 because "there is no evidence of an inability to ambulate effectively as defined in [Listing] 1.00B2b,[4] nor is there evidence of motor loss, sensory loss or positive straight leg raise test."  [*Doc. 13-3* at 18].  Plaintiff contends that this is error because, on February 2, 2009, Plaintiff's physical therapist found that Plaintiff had an antalgic[5] gait and positive straight-leg raising in the left leg.  [*Doc. 20* at 16] (citing *Doc. 15-5* at 14).  Plaintiff bears the burden of showing that her impairment matches a listed impairment, and she must show that her impairment matches all of the specified medical criteria of a listing.  *See Burk v. Astrue*, No. 11-5138, 2012 WL 3156313, at *2 (10th Cir. Aug. 6, 2012) (unpublished) ("An impairment that manifests only some of those criteria, no matter how severely[,] does not qualify.") (citation and internal

---

[4]Found in 20 C.F.R. § 404, Subpt. P., Appx. 1.

[5]*Stedman's Medical Dictionary* states that "antalgic" is a synonym for "analgesic," and the relevant definition of "analgesic" is: "Characterized by reduced response to painful stimuli."  *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 94 and 67.

quotation marks omitted).  While Plaintiff points to one medical record showing a positive straight-leg raise and moderate antalgic gait, other evidence in the record contradicts this finding, noting that Plaintiff's gait is non-antalgic and finding negative straight-leg raises.  *See, e.g.,* [*Doc. 14-5* at 65] and [*Doc. 15-5* at 3, 9, 24, and 29].  Plaintiff fails to state what other evidence in the record supports a finding that she meets the criteria of Listing 1.04.  Thus, the Court finds that the ALJ's finding that Plaintiff's lumbar impairment does not meet or equal Listing 1.04 is supported by the evidence in the record, and the Court will reject this claim.

## C.  The ALJ's Credibility Findings

Next, Plaintiff contends that the ALJ's credibility finding is contrary to the evidence in the record.  [*Doc. 20* at 17-19].  The ALJ found that Plaintiff was not credible based on evidence in the record of symptom magnification, overreaction, possible amplification of complaints, and inconsistency in Plaintiff's statements regarding her substance abuse.  [*Doc. 13-3* at 19 and 21].  An ALJ's assessment of the credibility of a claimant's description of symptoms "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, at *4, 1996 WL 374186.  The Tenth Circuit has "emphasized that credibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002) (citation and internal quotation marks omitted).  Such findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133

17

(10th Cir. 1988) (footnote omitted); *see also, Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that ALJ's credibility determination was inadequate where decision simply recited general factors he considered and then said claimant was not credible based on those factors but "did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

The Court finds that the ALJ provided adequate support for his credibility findings. As noted by the ALJ, Plaintiff's treating and examining doctors reported suspected symptom magnification, overreaction, and amplification of complaints. *See* [*Doc. 13-3* at 19 and 21], [*Doc. 14-5* at 65], [*Doc. 15-4* at 40], and [*Doc. 15-5* at 23]. The ALJ discussed the medical evidence that supported such findings, noting that the evidence in the record points to only mild to moderate spinal impairments. [*Doc. 13-3* at 19-20]. The Court, therefore, finds that the ALJ set forth the reasons supporting his credibility assessment as required, and the ALJ's findings regarding Plaintiff's credibility are sufficiently linked to substantial evidence in the record. The Court will deny this claim.

## D.  Remaining Alleged Errors

Plaintiff alleges that the ALJ erred in his RFC assessment at step four and in his finding at step five that there are jobs in the national economy that Plaintiff can perform. [*Doc. 20* at 19-25]. The Court declines to reach these issues because both the RFC assessment, and, if reached, any step-five findings, may be affected by the ALJ's consideration on remand of Plaintiff's mental impairments at step two, consistent with this decision.

Finally, Plaintiff asks the Court for an outright reversal for an immediate award of benefits, stating that additional fact finding would serve no useful purpose.  [*Doc. 20* at 26] (citing *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987)).  In *Dollar*, the Tenth Circuit held that additional fact finding would serve no useful purpose because the claimant was not capable of performing light work and, even if he were found to be capable of performing sedentary work, based on his age, lack of transferable skills and past relevant work, and the fact that he was illiterate, the claimant was disabled as a matter of law.  *Id.* at 535-36.  The Tenth Circuit further noted that the claimant had been attempting to obtain benefits for six years and "that further administrative proceedings would only further delay the appropriate determination and award of benefits."  *Id.* at 536.  The record in this case, however, is not clear that Plaintiff should be found to be disabled, and additional fact finding consistent with this opinion would be useful in making that determination.  The Court, therefore, finds that remand is appropriate.

## VI.  Conclusion

In conclusion, the Court **FINDS** that the ALJ failed to apply correct legal standards at step two in assessing Plaintiff's mental impairments.  Accordingly, the Court will **GRANT in part** Plaintiff's *Motion to Reverse or Remand the Administrative Decision (Doc. 19)* and **REMAND** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  The Court will **DENY** the motion to the extent it asks the Court to reverse the Commissioner's decision and enter an immediate award of benefits.

**IT IS THEREFORE ORDERED** that  Plaintiff's *Motion to Reverse or Remand the Administrative Decision (Doc. 19)* is **GRANTED in part** and this case is **REMANDED** to the

Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A

final order will be entered concurrently with this Memorandum Opinion and Order.

      **IT IS SO ORDERED.**

*Lourdes A. Martínez*
_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**